CULPEPPER, Judge.
The defendant insurer, Aetna Casualty & Surety Company, appeals from a judgment awarding the plaintiff, Jessie Fonte-not, workmen’s compensation benefits for total and permanent disability resulting from an accident on April 20, 1965.
The issue on appeal is whether any disability from the 1965 accident continued beyond February 1, 1966, the date on which workmen’s compensation payments were stopped. Defendant contends there is no physical disability or, if any, that it results from a prior accident in 1959. There is also an issue of traumatic neurosis.
Before discussing the facts of the 1965 accident, at issue here, we note that in 1959 plaintiff was in a prior automobile accident, in which he injured his right knee (the same knee reinjured in 1965). In 1959 a torn cartilage was surgically removed from the knee. He contends he had no atrophy, weakness or limping from the 1959 accident after a year or two, although he did settle a workmen’s compensation claim for $5,000, claiming total and permanent disability. The facts show that he returned to work as a car salesman and earned about $600 a month up until the 1965 accident. He drove cars and trucks and could stand or walk as necessary for the 8 to 10 hours a day he worked.
On April 20, 1965, plaintiff was employed by Pitre Ford Company of Ville Platte as a salesman of cars and trucks. He was driving an automobile, in the course of his employment, when he struck a cow on the highway and received personal injuries. He was taken to the hospital in Ville Platte where his injuries were initially diagnosed by Dr. R. K. Vidrine, a general practitioner, as multiple bruises to the chest, brain concussion, fracture of the patella (knee cap) of the right leg, cervical strain and lumbosacral strain. A cast was applied to the right leg and initial treatment consisted of bed rest and drugs for infection and pain. Plaintiff was in the hospital for a total of about 2 weeks. The cast was removed about 6 weeks after the date of the accident and, by that time, Dr. Vidrine was of the opinion that plaintiff had completely recovered from the injuries to his neck and back, but had residual atrophy of the right leg.
Dr. Vidrine then prescribed exercise and physical therapy to rehabilitate the muscles *355 of the right leg which had become atrophied during the wearing of the cast. However, he became dissatisfied with the progress plaintiff was making and referred him to Dr. C. W. Lowery, an orthopedic surgeon in Alexandria.
Dr. Lowery saw plaintiff on July 27,1965 and diagnosed “a subsiding cervical strain with limitation of rotational motion. My second diagnosis was a healed fracture, right patella, with marked quadriceps atrophy and limitation of motion.” It was Dr. Lowery’s prognosis that plaintiff would recover from both the cervical strain and the atrophy of the leg within about 1 month from the date of his examination, after which time plaintiff could return to work as a car salesman, provided physical therapy treatments were continued to rebuild the muscles of the right leg.
Plaintiff then took physical therapy treatments in Opelousas, but stopped after a few weeks, stating to Dr. Vidrine that the treatments were too painful and that he was receiving no benefit.
On the recommendation of his attorney, plaintiff next went to Dr. James A. Brown, a neurosurgeon of Houston, Texas. He was seen by Dr. Brown on October 11, October 25, and December of 1965, and on January 21, 1966. Dr. Brown found plaintiff disabled by several physical residuals of the accident as well as “severe traumatic neurosis.” As to the right knee, it was this physician’s opinion that the patella had healed but it had aggravated an arthritic process in the knee (plaintiff is 46 years of age). He also opined that arthritis in the left knee was aggravated. Dr. Brown found tenderness in both the cervical and lumbosacral spine which he said resulted from the aggravation of the arthritic process in these areas. Of course, he thought all these disabling conditions resulted from the 1965 accident.
At the request of the defendant, plaintiff was examined on December 13, 1965 by Dr. William L. Meuleman, an orthopedic surgeon of Lafayette. It was this physician’s opinion that although plaintiff had pre-existing arthritis in his low back and his right knee, he had completely recovered from all effects of the 1965 accident. Dr. Meuleman stated that plaintiff could return to work as a car salesman.
The treating physician, Dr. Vidrine, continued to see plaintiff until about 1 month before the trial on September 13,1966. Dr. Vidrine remained of the opinion that the injuries to the neck and back had completely subsided to their pre-accident state, but he thought the plaintiff was disabled due to atrophy and weakness in the right leg resulting from the 1965 accident. He was obviously disappointed that plaintiff felt he could not tolerate the exercise and physical therapy treatments and had discontinued them. It was Dr. Vidrine’s opinion that if plaintiff had followed these treatments after the removal of the cast the muscles could have been rebuilt. However, he said that after many months passed the muscle fibers developed scar tissue and now it would be difficult, if not impossible, to rebuild the muscles.
We are much impressed with the reasonableness and logic of Dr. Vidrine’s testimony. With reference to whether the 1959 accident or the 1965 accident caused the present condition, it was Dr. Vidrine’s opinion that the 1965 accident was at least partially responsible. Dr. Vidrine has been plaintiff’s family doctor for several years and knew personally that plaintiff was active and working satisfactorily as a car salesman before the 1965 accident. However, it was this physician’s opinion that now plaintiff cannot stand or walk or exercise the right leg for long periods of time without substantial pain.
From the above we see the expert medical testimony is in conflict. At one extreme we find Dr. Meuleman, a Board Certified Orthopedic Surgeon, who is of the opinion that plaintiff has completely recovered from the 1965 accident. At the other extreme, we find Dr. Brown, a neurosurgeon of considerable experience, but not *356 Board Certified, who found plaintiff was disabled from residuals not only to the knee but also the neck and back; and also was suffering from severe traumatic neurosis. Dr. Lowery, also a Board Certified Orthopedic Surgeon, found plaintiff disabled in July of 1965 and predicted his recovery within about 1 month, provided exercise and physical therapy treatments were successful. But, these treatments were not followed.
Dr. Vidrine, a general practitioner, and the treating physician on this case, is of the opinion that although plaintiff has completely recovered from the neck and back injuries, he is still disabled by atrophy and weakness of the right leg as of the date of the trial. This opinion is strongly corroborated by the fact that about 6 weeks before the date of the trial, Dr. Vidrine surgically removed a callous from the bottom of plaintiff’s right foot. This callous was formed by plaintiff limping.
The lay testimony shows that from March until August of 1966 plaintiff worked at a used car lot in Oakdale. But he did only the office work and was unable to perform all the duties of a salesman, i. e., he could not stand or walk for long periods of time, or drive a car or truck with a standard transmission, because of weakness in the right leg.
Under all the circumstances, we find no manifest error in the opinion of the trial judge that plaintiff still had disabling physical residuals of the injury to his right knee as of the date of trial. This is a sufficient basis for the recovery of benefits for total and permanent disability. Having reached this conclusion, it is not necessary for us to rule on the question of traumatic neurosis.
Defendant has filed an application to remand this case to the trial court. The basis of the request is that on August 23, 1966, which was about 1 month before the trial, plaintiff was examined by Dr. Gilíes R. Morrin, a psychiatrist of Lake Charles. This physician expressed the opinion that plaintiff was not suffering from traumatic neurosis. At the trial, defense counsel asked plaintiff for the names of all doctors by whom he had been examined and plaintiff failed to name Dr. Morrin. It was not until about 1 month after judgment was rendered in the lower court, too late to apply for a new trial, or a suspensive appeal, that defendant learned of Dr. Mor-rin’s examination. Defendant asserts that in the interest of equity this case should be remanded for the testimony of this psychiatrist.
In view of our finding that plaintiff is physically disabled as of the date of trial, we see no need to remand the case for any psychiatrist’s testimony. The motion to remand is accordingly denied.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.